UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 12-256-DLB-CJS

TONY and MARY ANN TULLY                                                    PLAINTIFFS

VS.                        MEMORANDUM OPINION AND ORDER

EATON CORPORATION                                                          DEFENDANT

* * * * * * * * *

## I.   INTRODUCTION

Plaintiffs Tony and Mary Ann Tully bring this action to enforce an assigned claim for indemnity, or in the alternative, contribution, against Defendant Eaton Corporation for injuries Tony Tully sustained when his tractor broke due to a defective transmission housing allegedly manufactured by Eaton.  The Court has diversity jurisdiction over the instant action pursuant to 28 U.S.C. § 1332.

This matter is currently before the Court on Defendant's Motion to Dismiss Plaintiffs' Complaint (Doc. # 13) and Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss; Request for an Extension of Time to Respond; Motion for Leave to Amend the Complaint; Request for Oral Argument (Doc. # 17).  These motions are fully briefed and ripe for review.  (*See* Docs. # 28 & 38).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

In December 2007, Tony Tully was using his Massey Ferguson 471 tractor to plow snow in a parking lot when the tractor suddenly broke in half.  Tully sustained permanent

1

injuries as a result of the accident. Mr. Tully and his wife, Mary, filed suit in Mason County Circuit Court against Brewer Tractor Sales, Inc., the dealership that sold the tractor to them, and AGCO Corporation, the company that assembled and sold the tractor to the dealership. *Tony Tully, et. ux. v. AGCO Corporation, et. al.,* Mason Circuit Court, Civil Action NO. 08-CI-00271. AGCO and the Tullys ultimately reached a settlement in which AGCO agreed to pay the Tullys a sum certain[1] in exchange for a full release from all claims and dismissal of the state court action. AGCO also agreed to assign ". . . all of [its] right, title and interest in any claim, including . . . all claims for indemnity . . . against AGCO's suppliers of transmissions housings, including without limitation, Eaton Corporation . . . ." (Doc. # 1, at ¶ 43).

After settling with AGCO, the Tullys initiated the instant action with the filing of a Complaint against Eaton in this Court on December 7, 2012, seeking to enforce the indemnity or, alternatively, contribution claim assigned to them by AGCO, and recover the amount AGCO agreed to pay them. (Doc. # 1). The Tullys allege that Eaton manufactured and sold the transmission at issue to AGCO, and that AGCO then incorporated the transmission into the subject tractor. They further allege that the transmission housing was defectively manufactured and unreasonably dangerous, and that it was the proximate cause of Tony Tully's injuries. They claim that Eaton was therefore negligent in connection with the manufacture and sale of the subject tractor; that its negligence was active and primary, while AGCO's negligence was passive and secondary; and that it is liable to AGCO for indemnification, or in the alternative, contribution.

Eaton now moves to dismiss the Complaint on personal jurisdiction, venue, and *forum non conveniens* grounds. (*See* Doc. # 13). The Tullys oppose this relief, and move for an extension of time to take discovery on the issue of personal jurisdiction. (*See* Doc.

---

[1] The settlement amount need not be identified here.

# 17). They also move for leave to amend the Complaint to add Eaton's Brazilian subsidiary, Eaton Ltda., as a defendant. (*Id.*). For reasons that follow, the Court finds that it cannot resolve Eaton's personal jurisdiction, venue, and *forum non conveniens* arguments without a more fully developed record on the nature of the legal relationship between Eaton and Eaton Ltda. The Court will therefore **deny** Eaton's motion to dismiss and **grant** the Tullys' motion to amend.

### III. ANALYSIS

**A.     Defendant's Motion to Dismiss Plaintiffs' Complaint**

**1.     Standard of Review**

In considering a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff, as the party asserting personal jurisdiction, always bears the burden of demonstrating that jurisdiction exists. *See, e.g.*, *Serras v. First Tenn. Bank Nat'l Assn.*, 875 F.2d 1212, 1214 (6th Cir. 1989); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). However, when the court evaluates a jurisdictional motion relying solely on written materials, "the plaintiff should be required only to make a prima facie case of jurisdiction . . . [and] the burden of the plaintiff is relatively slight." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168-69 (6th Cir. 1988); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (finding that "the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal"). Without conducting an evidentiary hearing, the court resolving a Rule 12(b)(2) motion "must consider the pleadings and affidavits in a light most favorable to the plaintiff," *CompuServe*, 89 F.3d at 1262, and "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459 (citing *Serras*, 875 F.2d at 1214). Therefore, "[d]ismissal . . . is proper only

if all the specific facts which the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction." *CompuServe*, 89 F.3d at 1262 (citing *Theunissen*, 935 F.2d at 1459).

    **2.**    **Specific Jurisdiction**

The Tullys contend that the Court has specific jurisdiction over Eaton. In order to exercise specific jurisdiction, the Court must find that the suit arises out of or is related to the defendant's contacts with the forum state. *Third Nat. Bank in Nashville*, 882 F.2d 1087, 1089 (6th Cir. 1989). Under Kentucky law, the Court must employ a two-step process to determine whether it can exercise specific jurisdiction over a nonresident defendant. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). First, the Court must review Kentucky's long-arm statute to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. *Id.* There must be a "reasonable and direct nexus" between the wrongful acts alleged in the plaintiff's complaint and the defendant's conduct or activity. *Id.* at 58-59. If the statute does not apply, personal jurisdiction cannot be exercised over the defendant. *Id.* at 57. If the statute does apply, the Court must then proceed to the second step: determining whether exercising personal jurisdiction over the defendant offends the defendant's federal due process rights. *Id.* If the Court finds that the defendant's due process rights are not violated, exercise of personal jurisdiction over the nonresident defendant is proper. *Id.*

By the instant Motion to Dismiss (Doc. # 13), Eaton argues that the Court lacks personal jurisdiction over it because it has "no connection whatsoever to the transmission at issue." (Doc. # 13, at 6). Specifically, it denies that it designed, manufactured, or assembled the transmission. Instead, it asserts that the transmission was assembled by Eaton Ltda., a limited liability company, at its plant in the city of Valinhos, in Sao Paulo,

4

Brazil (Doc. # 13-1, Declaration of Cesar Daniro Pucci, at ¶ 2), using component parts supplied by Tupy Fundicoes, Ltda., another Brazilian company (*id.* at ¶¶ 4, 7). It further asserts that Eaton Ltda. delivered the assembled transmission to AGCO do Brazil Comercio e Industria Ltda. at is plant in Brazil ("AGCO Brazil") (*Id.* at ¶ 8). Eaton claims that Eaton Ltda. is its "indirect foreign subsidiary" (*id.* at ¶¶ 1, 5, & 10; Doc. # 13-2, Declaration of Lizbeth Wright, at ¶¶ 5-7), and that Eaton Ltda. is a separate legal entity with an independent board of directors and management. (Doc. # 13-2, at ¶¶ 5-7). Eaton thus argues that it is not a proper party to this action because the Tullys have failed to connect it to Eaton Ltda.'s assembly of the transmission at issue, and have therefore failed to demonstrate that AGCO ever had any rights against it that it could assign to them. Accordingly, it moves the Court to either dismiss the Complaint for lack of personal jurisdiction, or grant summary judgment in its favor because the undisputed material facts show that it is not a proper party to this action.

In their response brief (Doc. # 17), the Tullys dispute that Eaton and Eaton Ldta. are separate legal entities. They attach press releases, SEC filings, and print-outs from Eaton's website for Brazil, purporting to show that Eaton owns the Valinhos Plant in Brazil, "candidly uses the facility as part of its own business, and openly admits it employs the workers at that plant, including the officers and directors who control the plant." (Doc. # 17, at 5). Accordingly, they assert that Eaton is the proper defendant in this action. They further assert that the Court has long-arm jurisdiction over Eaton because it derives substantial revenue from Kentucky and conducts regular and continuous business in the Commonwealth. Specifically, they claim that farm machinery containing Eaton's parts is sold in the Commonwealth by AGCO in 19 authorized dealerships. They argue that their

5

claims for indemnification or contribution arise from Eaton's business activities in the Commonwealth because Tony Tully was injured in Kentucky by a Eaton-manufactured transmission purchased in Kentucky. They also assert that Eaton's due process rights would not be offended if the Court exercised personal jurisdiction over it. Accordingly, they urge the Court to deny Eaton's motion to dismiss/motion for summary judgment. In the alternative, they request an extension of time to respond to Eaton's motion to dismiss/motion for summary judgment so that they can conduct discovery on "Eaton's relationship with AGCO, Eaton's relationship with Eaton Ltda., and both Eaton and Eaton Ltda.'s business activities in, and contacts with, the Commonwealth of Kentucky." (*Id.*). In the event that the Court finds that Eaton is not a proper party, the Tullys also move the Court for leave to amend the Complaint to add Eaton Ltda. as a defendant under a corporate veil-piercing theory.

In its reply, Eaton argues that the proof submitted by the Tullys does not demonstrate that it directly owns the Valinhos Plant. It contends that at best, the Tullys' proof merely shows that the Plant is an asset of its subsidiary, CAPCO Automotive Products Corporation.

For the reasons that follow, the Court finds that it cannot determine whether it has long-arm jurisdiction over Eaton until the record is more fully developed regarding the nature of the legal relationship between Eaton and Eaton Ltda. This case is still in its early stages and the parties have not yet conducted much, if any, discovery on that relationship. As a result, the Court is unprepared to make a finding regarding personal jurisdiction based on the limited proof the parties have thus far advanced.

6

Moreover, the legal relationship between these entities is undisputedly a crucial question in this case. If Eaton Ltda. is a legally distinct entity from Eaton, the Court will lack long-arm jurisdiction over Eaton because the Tullys will be unable establish a "reasonable and direct nexus" between Eaton Ltda.'s assembly of the transmission at issue and Eaton's business activities or conduct in the Commonwealth. *See Caesars*, 336 S.W.3d at 58-59 (holding that the Kentucky law-arm statute requires a "reasonable and direct nexus" between the wrongful acts alleged in the plaintiff's complaint and the defendant's conduct or activity). Absent long-arm jurisdiction, the Court could not exercise personal jurisdiction over Eaton and would likely have to dismiss the Complaint. *See id.* at 57-59 (holding that long-arm jurisdiction is a pre-requisite to personal jurisdiction).

Conversely, if Eaton Ltda. is not a legally distinct entity from Eaton Ltda.—either because Eaton owns Eaton Ltda. or because there is a loss of corporate separateness between the two entities such that veil-piercing is appropriate—then the Court may have personal jurisdiction over Eaton. *Cf. Johnson v. Diamond Shine, Inc.*, 890 F. Supp. 2d 763, 772-74 (W.D. Ky. 2012) (employing a veil-piercing analysis to determine whether personal jurisdiction over a corporate shareholder was proper).

The issue of personal jurisdiction is thus better addressed in a motion for summary judgment when the Court has the benefit of a more fully developed record through discovery upon which to base its decision.

### 3.     Venue and *Forum Non Conveniens*

Eaton also argues that venue is improper in the Eastern District of Kentucky under 28 U.S.C. § 1391 because it is not subject to personal jurisdiction in this District and because the event giving rise to Tullys' claims did not occur in this District. According to

7

Eaton, because the Tullys are suing as assignees of AGCO for indemnity and contribution, the relevant event at issue is not the breaking of the transmission in Kentucky, but Eaton Ltda.'s supply of the transmission to AGCO Brazil in Brazil. Eaton thus urges the Court to either dismiss the Complaint or transfer this case to Ohio—Eaton's state of incorporation.

Alternatively, Eaton asserts that the Court should dismiss the Complaint because Brazil is the proper forum under the *forum non conveniens* doctrine. Eaton reasons that *forum non conveniens* applies here because the only potentially liable entities are Eaton Ltda. and Tupy—both Brazilian companies involved in manufacturing the transmission at issue. Eaton further reasons that "[a]ll relevant business dealings took place in Brazil, between companies located in Brazil, and involved individuals who reside in Brazil" (Doc. # 13, at 10); that Brazil has a significant interest in this litigation because it involves potential liability against Brazilian entities; and that Brazilian law would apply under Kentucky choice of law rules, regardless of whether the Tullys' claims sound in contract or tort.

However, the Tullys correctly assert that Eaton's venue and *forum non conveniens* arguments are both predicated on Eaton's claim that it is not the proper party and that Eaton Ltda. is a separate legal entity. As stated, these arguments cannot be addressed until after the Court determines the nature of the legal relationship between Eaton and Eaton Ltda. Eaton's venue argument relies on its assertion that the Court lacks personal jurisdiction over it—an issue the Court will not determine at this stage. Likewise, Eaton's *forum non conveniens* argument depends on its claim that Eaton Ltda. is a separate legal entity and that the Court should therefore dismiss the Complaint in favor of Brazilian jurisdiction. Both of these arguments, like Eaton's personal jurisdiction argument, are

better addressed in a motion for summary judgment following discovery.

The Court will therefore deny Eaton's motion to dismiss and permit the Tullys' to take discovery on Eaton's relationship with Eaton Ltda., Eaton's relationship with AGCO, and both Eaton and Eaton Ltda.'s contacts with Kentucky.

**B.     Plaintiffs' Motion for Leave to Amend**

It is well-known that under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend should be freely granted when justice so requires. "In deciding whether to allow an amendment, the court should consider the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. American Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001) (citation omitted). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Tullys move for leave to amend their Complaint to add Eaton Ltda. as a party under a veil-piercing theory. To demonstrate that leave to amend is not futile, the Tullys must allege sufficient facts which, if true, would support a *prima facie* claim for piercing Eaton's corporate veil. *See Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.") (quotation omitted). Kentucky trial courts will pierce a corporation's veil where two dispositive elements are met: (1) domination of the corporation resulting in a loss of corporate separateness and (2) circumstances under

which continued recognition of the corporation would sanction fraud or promote injustice."[2] *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152, 165 (Ky. 2012). In resolving the first element, the trial court looks to a number of factors to determine whether there is a loss of corporate separateness. *Id.* at 163, 165. These factors include:

    (a)    Does the parent own all or most of the stock of the subsidiary?

    (b)    Do the parent and subsidiary corporations have common directors or officers?

    (c)    Does the parent corporation finance the subsidiary?

    (d)    Did the parent corporation subscribe to all of the capital stock of the subsidiary or otherwise cause its incorporation?

    (e)    Does the subsidiary have grossly inadequate capital?

    (f)    Does the parent pay the salaries and other expenses or losses of the subsidiary?

    (g)    Does the subsidiary do no business except with the parent or does the subsidiary have no assets except those conveyed to it by the parent?

    (h)    Is the subsidiary described by the parent (in papers or statements) as a department or division of the parent or is the business or financial responsibility of the subsidiary referred to as the parent corporation's own?

    (i)    Does the parent use the property of the subsidiary as its own?

---

[2] Eaton argues that when considering whether corporate veil-piercing is appropriate, Kentucky courts apply the law of the state of incorporation of the corporation to be pierced, not the law of Kentucky. (Doc. # 13, at 12; Doc. # 28, at 5-7). Eaton asserts that the Court should thus apply the law of Brazil, Eaton Ltda.'s state of incorporation. (Doc. # 28, at 5-7). The Tullys disagree; they posit that Kentucky courts apply Kentucky law to such an inquiry. (Doc. # 17, at 6; Doc. # 38, at 4-7). It is unnecessary at present for the Court to enter into this choice of law thicket because Eaton has failed to demonstrate a conflict of law between Kentucky and Brazil with regard to veil-piercing. The Court thus applies Kentucky law for the purposes of Plaintiffs' motion to amend.

  (j)  Do the directors or executives fail to act independently in the interest of the subsidiary, and do they instead take orders from the parent, and act in the parent's interest?

  (k)  Are the formal legal requirements of the subsidiary not observed?

*Id.* at 163-64.  The most important factors for the trial court to consider in assessing the first element are whether there is (1) "grossly inadequate capitalization"; (2) "egregious failure to observe legal formalities and disregard of distinctions between parent and subsidiary"; or (3) "a high degree of control by the parent over the subsidiary's operations and decisions, particularly those of a day-to-day nature."  *Id.* at 164 (internal quotations omitted).

  Here, the Tullys allege the following facts supporting the first *Inter-Tel Technologies* element:

  (1) Eaton owns and controls 100% of Eaton Ltda.;
  (2) Eaton claims Eaton Ltda.'s employees as its own;
  (3) Eaton claims Eaton Ltda. as a division of Eaton;
  (4) Eaton and Eaton Ltda. have common officers and directors;
  (5) Eaton provides all of the capital and owns or provides the majority of the assets that Eaton Ltda. uses;
  (6) Eaton pays the debts of Eaton Ltda.; and
  (7) Eaton owns the Valinhos Plant allegedly used by Eaton Ltda.

(Doc. # 38, at 9).  The foregoing facts adequately allege a loss of corporate separateness under *Inter-Technologies*' multi-factor test.  Eaton makes no argument to the contrary, though it continues to dispute the truth of these alleged facts.  The Tullys have thus demonstrated that leave to amend would not be futile under the first *Inter-Technologies* element.

  In resolving the second element, the court must determine whether continued recognition of the corporation would sanction fraud or promote injustice. *Inter-Tel*

11

*Technologies*, 360 S.W.3d at 165.  "[T]he injustice must be some wrong beyond the creditor's mere inability to collect from the corporate debtor."  *Id.* at 164.  The *Inter-Tel Technologies* court listed three examples of the requisite injustice required to support a veil-piercing claim, though it emphasized these examples were non-exhaustive: (1) "where a party would be unjustly enriched"; (2) "where a parent corporation that caused a sub's liabilities and its inability to pay for them would escape those liabilities"; and (3) where "an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful."  *Id.*

To satisfy this second element, the Tullys make the following allegations in their supplemental reply brief (Doc. # 38):

> [I]t would be a gross injustice if Eaton Corporation was permitted to manufacture transmissions for farm tractors sold throughout the United States, using cheap foreign labor and materials, then escape responsibility when defects in those tractors caused serious injury to a U.S. farmer or worker.
> (. . .)
>
> Eaton Ltda. does not have sufficient assets to resolve a judgment against it . . . Eaton Ltda. has a **36 million** dollar judgment pending against it from a Brazilian trial court's decision in 2010.  In Eaton's 2011 Annual Report, and in a plethora of other public documents, Eaton, not Eaton Ltda., stated it would pay the judgment entered against Eaton Ltda. . . . [N]ot only is Eaton Ltda. insolvent and unable to pay a judgment against it, . . . Eaton intentionally kept Eaton Ltda. this way to escape liability and to squirrel assets into a liability free corporation, itself, while heaping liability on an asset-free corporation, Eaton Ltda.

(Doc. # 38, at 8-9) (emphasis in original).  The Tullys thus explicitly allege that continuing to respect the corporate separateness of Eaton and Eaton Ltda. would unjustly enrich Eaton, permit Eaton to escape liabilities they caused Eaton Ltda. to incur, and ignore Eaton's scheme to heap liability on the asset-free Eaton Ltda.  These facts thus adequately

allege injustice under the second *Inter-Tel Technologies* element. The Court thus finds that the Tullys have alleged sufficient facts which, if true, could support a *prima facie* claim for piercing Eaton's corporate veil, such that granting leave to amend would not be futile. Accordingly, the Court will grant their Motion for Leave to Amend.

### IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) Defendant's Motion to Dismiss Plaintiffs' Complaint (Doc. # 13) is hereby **DENIED**;

(2) Plaintiffs' Motion for Leave to Amend the Complaint (Doc. # 17) is hereby **GRANTED**;

(3) Plaintiffs shall file their amended complaint on or before **August 30, 2013**;

(4) The parties shall have **nine (9) months** from the date of this Order to conduct discovery on issues related to personal jurisdiction, including the legal relationship between Defendant Eaton and Eaton Ltda.; and

(5) Plaintiffs' Request for an Extension of Time to Respond and Request for Oral Argument (Doc. # 17) are hereby **DENIED as moot**.

This 16th day of August, 2013.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\Opinions\Covington\2012\12-256 MOO denying MTD and granting leave to amend.wpd